BARRY, Judge.
This appeal challenges a summary judgment in favor of the Board of Commissioners for the Port of New Orleans and the Board’s insurer in this wrongful death action.
On March 21, 1988 Benito Lujano was killed when he fell down a passenger elevator shaft at the New Orleans Public Grain Elevator. Lujano was employed by HNV Central Riverfront Corp. which had leased the premises from the Board beginning about July, 1986. The prior lessee, Peavey Corp., had vacated the premises between January and April 15, 1985. The Board had possession of the premises in the interim.
Lujano’s widow and children filed suit based on negligence and strict liability against the Board; United States Fidelity and Guaranty Company; American Crescent Elevator Corp., which apparently serviced the elevator for HNV Central; Peav-ey; Conagra, Inc.; Public Grain Elevator of New Orleans, Inc.; Raftery Corp.; the State of Louisiana; and “Commodities West L.P., formerly/and HNV Central Riverfront Corporation.” Hartford Accident *563 & Indemnity Co. intervened for reimbursement of worker’s compensation benefits.
The Board and USF & G filed a motion for summary judgment based on La.R.S. 9:3221 and the lease between the Board and HNV Central wherein HNV Central assumed responsibility for the condition of the premises and obligated itself for all maintenance and repair of the facility. La. R.S. 9:3221 provides:
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
In support of the summary judgment motion the defendants submitted an affidavit of HNV Central’s President, records of work by American Crescent, plus depositions of the Board’s Maintenance Supervisor and Portwide Maintenance Manager.
A summary judgment is appropriate only if there is no genuine issue of material fact. La.C.C.P. Art. 966. A motion for summary judgment is not a substitute for trial on the merits and every reasonable doubt should be resolved against the moving party. Oiler v. Sharp Electric, Inc., 451 So.2d 1235 (La.App. 4th Cir.1984), writ denied 457 So.2d 1194 (La.1984).
Plaintiffs claim issues of material fact remain and that the Board has regulatory functions, legislatively created, which include ensuring the safe condition of structures under its jurisdiction.
In an affidavit, Louis Viator, the president of HNV Central, stated that he signed the lease and when HNV Central took over the facility its passenger elevator was placed in good working condition. He said that HNV Central was responsible for all repairs during the lease. American Crescent’s records show repairs they made since HNV Central’s occupation of the grain elevator.
Depositions of Palmer Fraering, the Board’s Maintenance Supervisor, and Leonard Spalluto, the Portwide Maintenance Manager, indicate they did not inspect the premises during the period of and immediately preceding HNV Central’s occupation. Fraering said he made a “condition survey” in April, 1985 without addressing the passenger elevator in particular, but rode the elevator at that time. He stated that Larry Stokes, a Board District Supervisor, would have inspected and filed a report during the time the grain elevator premises were not occupied. No such report is contained in the record. Fraering and Spalluto did not know of any other inspection.
Lujano submitted the affidavit of James L. Secrest which states that he worked at the grain elevator from August 23, 1976 until sometime in January, 1985 when Peavey was in the process of closing its operation of the grain elevator. Secrest returned to work at the grain elevator on January 21,1988 and his affidavit provides:
The passenger elevator in the new house of the grain elevator was in the same condition when he returned to work on January 21, 1988 as it was when he left the facility in January, 1985. That is, the passenger elevator doors opened without the elevator being present; the passenger elevator doors remained open at times while the elevator was running; and the safety devices which had been non-operational in 1985 were still non-operational upon his return in January, 1988. To the best of his knowledge, information and belief, the elevators were in the same defective condition at the time he left the facility in 1985 as when he returned in January, 1988.
Approximately two to three days prior to the fatal accident of Benito Lujano, he observed two gentlemen who represented themselves to be agents for the Board of Commissioners for the Port of New Orleans or “Dock Board”, who were inspecting the grain elevator facility. He observed the representatives of the Dock Board on the bin floor and that to the best of his knowledge, information and belief, the gentlemen had to use the passenger elevator in question to get to that location. The representatives of the *564 Dock Board specifically questioned affi-ant on all aspects concerning the condition of the grain elevator.
Secrest’s affidavit indicates that the passenger elevator may have been continuously unsafe from 1985 including the period when the Board had custody of the premises. That raises a question of whether the Board knew or should have known that the passenger elevator was not safe, particularly since Viator’s affidavit only states that the elevator was “in good working condition” and does not mention its safety.
Secrest’s statements that prior to the accident, the Board’s representatives were “inspecting” the premises and its representative “had to use” the elevator during that inspection raises the factual question of whether the Board knew or should have known of the alleged unsafe condition of the elevator. While the depositions of Board employees are relevant, that alone would not negate whether the Board had knowledge, even without considering Sec-rest’s affidavit.
There are issues of material fact to be answered.
The summary judgment is reversed and the case remanded for further proceedings.
REVERSED; REMANDED.